Good morning. I'd like to reserve three minutes for rebuttal. Just watch the clock, please. Yes, thank you. Thank you. May it please the Court. The decision below should be reversed for three reasons. One, Harman's own pleadings. Two, the equities. And three, the errors of law and resolutions of material disputed facts. I'd like to start with Harman's own pleadings. Harman pled New York law claims. It specifically identified JEM's claims in New York and asked the California court to resolve those claims. It said, JEM filed in New York, and we should have a verdict in our favor on those claims. It expressly looked at New York law claims. We then asked for damages on those very issues. At 1803, we said we're entitled to damages on the very issues in the D.J. claims, and in our prayer for relief, we again asked for damages on the same page. As a result, since this is a choice of law issue and choice of law is resolved de novo, there should be no reason why any other Lachey's period should be applied other than the New York Lachey's period. The only reason that Harman gives in its brief why the New York law period should not be applied because of its D.J. claims is it claims that we did not move on the D.J. claims. However, that's not true. In our brief for motions for summary judgment, docket 69, page 27 to 28, and in the footnote, we specifically moved on the D.J. claims. We specifically said that Harman identified New York law issues. Those come under a six-year statute, and it's undisputed that the filing was within six years. Since the court did not address this and Harman does not rebut it, for that reason alone, the six-years statute, Lachey should not be applicable. Counsel, can I back you up for a second? As I read the complaint, it says it's seeking a declaration that Harman did not infringe alleged to be owned by JEM under the Lanham Act or any state law. There's no mention of New York, so why should we read the complaint to say that it was trying to adjudicate issues under New York law? A few reasons. One, any state law includes New York. Two, Harman identified. Harman includes Hawaii, too, so are you telling us we should search the statute of limitations for all 50 states and maybe Puerto Rico and Guam and all the territories because it could be any law? I'm not saying that. I'm saying that JEM is in New York. JEM has a showroom in New York. It's in New Jersey and New York, and that Harman specifically pointed to JEM's filing in New York, identified all those New York allegations, and said to the court, you should rule on those allegations in our favor. That was a New York law case, and Harman is identifying it and specifically referring to it and referring to the New York causes of action and identifying New York law. As a result, since Harman is pointing specifically to New York claims and saying, you should rule we don't infringe those claims, the only law that could be applicable to those claims would be New York. But, you know, one of the things that the district court points out was that when you counterclaimed, you made counterclaims to arise only under Federal or California law. So should we read by implication that it should be California law based on your counterclaims?  On 1803, we're specifically pointing back to JEM's claims, to Harman's claims, and saying we're entitled to damages on those claims. So that has to apply under New York law. And likewise, in the prayer for relief on the very same page, we're saying we're entitled to damages. They do infringe. They wrong the DJ that they infringe, and we're entitled to damages. So we're specifically pointing to New York law claims that they identified, they pled, they specifically referred to. But I'm saying for your counterclaims, were your counterclaims arising under New York law? So we filed two counterclaims, Federal claims, which were basically representing the claims from the New York case. And then we filed California state law claims. We didn't feel we needed to file, again, New York state law claims, because Harman had already presented it. And under this Court's decisions, for example, Atlantic Richfield, once you have a DJ claim, you don't have to counterclaim on the very same issue that was already in the DJ claim. So when they identified New York law and we identified those claims and said you do infringe and we're entitled to damages, that all falls under the New York last use period as we submit, because there's no other way to read it than that they were identifying a New York case. Well, assuming we're working under the California limit, what is your argument as to why the transfer should have taken place? Yes, of course. Under two, the equities, even under the California last use period, JEM comes in under four years. If you look at the history below, JEM timely filed in its jurisdiction, and then actions by Harman and judicial delays were all counted against JEM as part of delay, which was not JEM's own delay. For example, the court below stayed the California proceedings. That's docket 31. It counted the entire period of stay against JEM as JEM's delay, but JEM did not delay. The court stayed the proceedings. Another example, docket 18. The court turned to Harman's case and said, you haven't prosecuted this case. I'm issuing an order to show courts why we should not dismiss for lack of prosecution. Docket 18, that delay counted against JEM. Likewise, motion practice in New York, motion practice in California to resolve all these issues, all of that delay was counted against JEM. It's not equitable, and this is about equity, for delays that are not JEM's delays to be counted against JEM. If you subtract all those delays, then there are 27 days from extra. I think that's Harman's point, that even if you were to include all of those tolling arguments, you would still be outside of the limitations period. So what difference does it make? But they do that by fudging the numbers. If you look at the actual numbers, June of 2020 is when we filed in New York. If you subtract all the delays of tolling under Burnett, under FLIR, under Boston Dental Group, if you subtract all those delays from the point when all those issues were resolved, 27 days later, we filed in California. If you add 27 days to June of 2020, you come out in July of 2020, which is still within four years. We have a typo in our brief, by the way. We say July 2021, but it should have been July 2020. Both our briefs have that typo. So if you look at a four-year California period, if you look at fairness and subtracting delays that weren't because of us, and they had noticed the entire time, this entire period, however this is going on, they had noticed from June 2020 onward, then there is no latches, even under a California four-year period. Under the California period, we filed within four years when you toll, as the Supreme Court did in Burnett, as the court in this district, the district court in FLIR, as the court did in Boston Dental. If you toll all that, we're still within four years. Is there equitable tolling for a Lanham Act claim? Has any case decided that one issue one way or the other? If the Lanham Act does not have a statute of limitations, does the equitable tolling doctrine even apply? So the Lanham Act is a latches issue equity, purely equity. Burnett is actually a strict statute of limitations. So our position is that a strict statute of limitations should be tolled, and obviously equity. But there is Boston Dental Group, which did toll, and that was a Lanham Act issue. Boston Dental Group tolled for the period that the proceedings were going on in the trademark office. It said that those proceedings should not be counted against the latches clock. It tolled the entire period. And likewise, in FLIR, they talk about the fact that while motion practice is going on, that should not be counted against the party. The resolution of motion practice and the jury should not consider that. But Boston Dental Group is expressly under a Lanham Act issue. So for that second reason of the equities, we should not have a timely filing and tolling converted into an untimely filing by really a pretext. Because if we really go back and look at the big picture, the only reason this case was allegedly filed in New York was because of the infinity claim, which was a complete pretext. Throughout discovery, not a single document was produced on infinity. And then later, they dismissed it. And then in their brief, they said infinity was inconsequential. The only reason this case supposedly came to New York was because of a claim that wasn't even litigated, that wasn't — It came to New York? I'm confused. I'm sorry. We filed in New York. They filed here. So you were talking about the claim going to New York because of infinity. That's what had me confused. I'm sorry. I misspoke. I misspoke. The claim was filed here because of infinity. I misspoke. I apologize. They filed here because of the infinity. Allegedly, it had to be here. But infinity was, again, not a single document of discovery. It was so important they would have produced discovery on it. They wouldn't have dismissed it. My sense is that the California district judge basically turned to the New York district judge, and we'll wait to see where he decides the case should be when he dismissed on the ground of misjoinder. He commented, okay, the party's going to have to figure out where this case should be. And as best I can tell, the next thing that happens is that your client files a counterclaim in California, which makes California the logical place for it to proceed thereafter. I mean, was there any appeal from the New York district court decision? So my understanding is that it wasn't appealable. It was dismissal without prejudice. They can be appealed. Trust me. They can be appealed. If it disposes of the case, it's without prejudice because you haven't extinguished your claims. But if you're out of court, I've gotten those appeals. So I take it there was not an appeal to the Second Circuit. That is correct. So thereafter, why shouldn't California be just perceived as, well, that's where the parties, as the New York district judge said, the parties had to figure out where this case was going to continue. And it looks like the answer is the Central District of California. Well, because when they sued here, they said that they wanted to adjudicate the New York claims. They never said we're not going to adjudicate the New York claims. So we understood that we were going to be, it's just whether the Second Circuit and the Ninth Circuit are equally able to adjudicate New York law claims. They never said until after discovery closed that they say this is entirely under California law. There was no notice to us of that at all. That itself is inequitable. And likewise, in terms of the first to file rule, we filed in New York, and then they filed here asking that the New York issues be adjudicated. And then when you take out all the tolling, even under the California period, we're still timely. So whether or not it was in New York or here, we never anticipated that they would basically ambush us after discovery was closed and say, no, no, this is completely under California law, despite all of the delays that we caused and despite the fact that we pled New York law. But if, you know, if Harmon was dismissed for misjoinder, why not just immediately refile a separate claim against Harmon in New York? I mean, that was the risk that you ran, wasn't it? We believe that would be subject to the first file rule that now California is first to file because after the dismissal in New York, this case was first. We thought we were obligated to proceed here. I'd also just like to briefly mention, I only have a few seconds left before the rebuttal time, that the court made numerous errors of law. They did not take into account issues in forcibility, for example, which are subject to, in this court, there are numerous disputed material issues of fact and law that the court, the court says, for example, enforcing our mark for years doesn't count. But this court has said the opposite. This court has said that it does count in American International Group and so forth. And there are numerous, many issues brought up in our papers of how disputed issues of fact, even if it was after four years, were resolved against Jim when they're really jury issues. All of these factual issues that are raised at length when confusion arose, those are all jury issues. I'd like to reserve my remaining time. Can laches be a jury issue? Yes. Yes, Your Honor. I believe it can be. Based on all the factual issues here, I believe it would be if it's not under four years or under the New York statute, laches period. I'd like to reserve my remaining time. Thank you. Thank you. Good morning, Your Honors. May it please the court. So, Jim has appealed two different rulings here. The first ruling was the venue decision where the district court denied its motion to transfer. The district court didn't abuse its discretion when it did that. Jim filed that based on the first-to-file rule. At the time the district court denied Jim's motion to transfer, the pending New York action was no longer pending anymore, and therefore it rejected the first-to-file rule and at that point dismissed the case, the New York case. Instead of, as Your Honor suggested, instead of refiling the case in New York, which they could have done, Jim decided, no, we're not going to file the case in New York. Instead, we're going to go to the California court, and we're going to ask the California court to lift the stay and then adjudicate the pending motion in California, their pending motion to dismissal for lack of personal jurisdiction or to transfer based on the first-to-file rule. The explanation we just heard is to acknowledge there was no appeal to the Second Circuit, acknowledge that it didn't file a new lawsuit in New York. I don't have the New York record in front of me, so I haven't explored this. I'm curious. The New York judge dismissed based on misjoinder because there was, I've now forgotten who was the other party. JVC, Your Honor. JVC, okay. Was there any argument to the New York judge that, well, if somebody gets dismissed for misjoinder, dismiss JVC, because we want to be able to proceed against Harmon, and that would have solved the problem because they still would be the first to file. Did that come up to the New York judge? No, Your Honor. That argument or that issue never came up. Another thing to point out here, which is really critical, is that JEM had actual knowledge of this starting on August 1, 2016, and actually there's a lot of evidence in the record that it should have had constructive knowledge of our sales long before that. But just if you start with August 1, 2016, actual knowledge, it then waited basically three years and 11 months to file the lawsuit. And where did it file the lawsuit after three years and 11 months? It filed it in the Southern District of New York, and JEM made the decision. So JEM made first the decision to wait that long. The record's clear. It said it wanted to sue five minutes after it first found out about our use. Waited three years and 11 months, and then it decided to file in New York. And then it decided, instead of filing an action against Harmon and an action against JVC, which is an unrelated party to us, it decided to join us together in the same action. And that was improper. And why was it improper? One of the reasons, as the district court in New York found in dismissing from Ms. Joinder, is because it was prejudicial to Harmon because it was trying to paint Harmon with all the evidence of alleged infringement by JVC. JVC and Harmon have absolutely no connection with one another. There was no basis to join them in the same lawsuit other than to prejudice Harmon or to prejudice JVC. So that's why Harmon moved from Ms. Joinder. Again, that was a decision that JEM made. JEM decided not to file separate actions. So then the district court ---- Well, Counsel, do you agree that if JEM had filed in SDNY separately, just against Harmon, it would have been within the four-year statute of limitations, correct? That's correct. It's the Ms. Joinder dismissal that adds this big wrinkle to it, I guess. That's correct. But the applicable statute of limitations in New York is six years. So at that point in time, the allegations that they made in that complaint against us were under federal law and New York law. So, yes, it would have been, if they would have decided to file within separate actions, as Your Honor suggested ---- It would have been well within the New York statute. But they, again, made a strategic decision. Let's not do that. Let's file them together. Then ---- But doesn't that cut against your argument a little bit, then, that why wait three years, 11 months? If they think they've got a six-year window, they're filing well within that time period. Well, because I think it's a litigation strategy. I respectfully disagree. I mean, they decided. They made the decision, right? They made the decision to wait to file. And, by the way, there's evidence in the record that I hope I'll have a chance to get to that shows they made that decision not to notify us of the infringement because they didn't want ---- They were fearful that we would file a declaratory judgment action. They didn't want us to have the ability to try to limit our exposure or get a judicial determination on our exposure. So they filed the case in New York. But they decided to file, to join the parties. There was no basis for it. Then it was dismissed. Instead of refiling in New York, which they could have done, they decided, no, we're not going to refile in New York. Instead, we're going to make the deliberate decision to ask the California court to lift the stay and adjudicate their motion. Then when their motion was denied ---- Just to be clear, by the time they got dismissed by the federal district court in New York, your complaint was already filed. That's correct, Your Honor. And your complaint did refer to both the federal and New York state law claims at issue in that other action. It referred to those claims, but it sought infringement of the infinity mark, which were the first five counts, and then a declaratory judgment of non-infringement with respect to the extreme mark under federal and state law. It doesn't specifically say New York. Well, it does. Those were the claims. In the New York action, you say in paragraph 73 that Jim brought claims under federal and New York common law, and then you're looking for declaratory judgment under the Lanham Act or any state law. Any state law. Correct, Your Honor. I mean, but there's an argument that that's just as inclusive of a New York action as it is of a California. Fair enough, but let me go back to the timeline. When the New York district court decided to dismiss the New York action, instead of refiling in New York, they asked the California court, let the state decide our motion to get back to New York. The California court rejected that motion, and then instead of then filing, they could have then refiled in New York. They decided not to. Instead, they filed counterclaims in the California court, so they invoked the jurisdiction of the California court, and those counterclaims allege four counts, two counts under the federal law and two counts under the state law. Those are the only counts they allege. In summary judgment, we move for summary judgment on their four counterclaims. They move for summary judgment on their four counterclaims. My friend says that they move for summary judgment on the declaratory judgment action for damages. I don't know what he's referring to there. I don't even know how you can get damages for a declaratory judgment claim, but in any event, he's never appealed the denial of his summary judgment motion in the district court. So the only thing on appeal, Your Honor, is the district court's decision, which was correct, to apply the four-year statute of limitations that applies in New York to California claims because those were the claims that were being adjudicated, and those are the only claims that have been adjudicated. The four-year statute of limitations that applies in New York. Pardon me, California. I apologize. Thank you, Your Honor. Multiple mistakes, but it's gotten me confused. I apologize. Yes, the four-year statute of limitations that applies in California. That's correct. The California court applied that because that's where it was sitting. Those were the claims under the federal law and the California law, and that's what all the case law does. And they've cited no case that says that the federal court that was in the position that the district court was here should apply the statute of limitations, should analogize the Latches defense and use the statute of limitations of a different court in which it's not sitting. On the Latches issue, Latches is an equitable doctrine, so why can you address the equitable tolling argument? Yes, I can. That's very important. Pardon me. No worries. I'm with you. The equitable tolling is a very important issue. So my friend on the other side has said they've applied this old Supreme Court case and said, oh, well, that should, the New York case, when we filed the New York case, that should have told the Latches period from running, okay? As we cited in our reply brief, that Supreme Court case has been modified or updated by a new Supreme Court case which came out in 2016, which is, if you'll bear with me, the Monaho Indian case, which we've cited in our brief. It's very critical. In that case, they say the only time you can have equitable tolling is if there is extraordinary circumstances beyond the litigant's control that prevented the timely filing, okay? Jim, if you look at its brief, it doesn't even argue that it could possibly meet that standard. Again, the timely filing, the reason why it could not timely file was extraordinary circumstances beyond its control that prevented it from timely filing. There's no evidence in the record that there was any extraordinary evidence beyond its control that prevented the timely filing. It chose to wait 3 years and 11 months before filing in the first place. So equitably look at both sides. What's the impact? I mean, Harmon's known that something was out there for at least some period of time before the California action was filed, and prejudice to Harmon is one of the factors we're supposed to weigh. How was Harmon prejudiced by the delay? Well, Harmon continued to build up its business around this JBL extreme mark, Your Honor, and if you look at the district court's decision, it talks about that additional versions of this JBL extreme speaker came out during the time of this delay. Harmon has hundreds of millions of dollars in revenues have been made during the time of this delay. Well, if the action had stayed in New York, if it hadn't been misjoined in the first place, Harmon would have been exposed to those claims. Harmon may have been. Harmon would. Well, the latches period, there would not be a strong presumption that latches would apply. Right. In California, in New York, there's a 6-year statute of limitations in which if you file after that, then there's a strong presumption that latches apply. You said California 6 years. Pardon me, New York. New York 6 years. I apologize. It's critical. New York 6 years. I feel like we've got to go to New York and do a hearing there, too, so we can see both coasts. So New York 6 years, California 4 years. So California, if you file 4 years after the claim has arisen or you have actual or constructive knowledge, then there is a quote, unquote, strong presumption that latches applies. And here they filed clearly after the 4-year period, and there's a strong presumption of latches. I'm not questioning the application of the California presumption in this case by the Central District of California. That's where forum courts customarily start. But in identifying prejudice, you've identified things that had the case stayed in New York wouldn't have had the same impact. Harman couldn't claim prejudice for at least the first part of the delay if the action had proceeded in New York. I'm not saying that's determinative, but I'm trying to figure out exactly what is the prejudice Harman suffered. Well, I think the prejudice would be at least the prejudice before the time since the actual knowledge, which the district court found was August 1st. I think there's constructive knowledge undisputed going way before that. But actual knowledge from August 1st, 2016, until the June 20th filing in California, that sales, those advertising, including the launch of the major product that is now the flagship product of JBL, pardon me, of Harman, the JBL Extreme product. I'll tell the players that a scorecard. The JBL Extreme product was launched in September of 2015. So that prejudice we still would have suffered in all the sales and all the advertising that occurred in essentially three years and 11 months before they filed even in New York, Your Honor. I just want to make sure I understand, because the district court essentially didn't reach your arguments about constructive notice. And just so I understand, if you're assuming for the sake of argument that we were to agree that there was an error in the finding of latches or the untimeliness on the ground that the district court reached it, it would still have to go back for the district court to reach your other arguments. Is that correct? I don't think so, Your Honor, because the evidence is undisputed. So you're saying we could reach it? I believe you could. You could find constructive knowledge way before the actual knowledge. Did you argue, Tess, that we could reach that? Yes, we did. We did in our brief, Your Honor. The JBL Xtreme product that was launched in September of 2015 to great fanfare, it was sold all over the United States. We're in the same industry. There's no way they didn't. They should be deemed under the case law that we've cited, under the evidence that we've cited, to have constructive knowledge long before August 1st of 2016. And that evidence is documented in our brief and in the record. Any further questions? No, thank you. Thank you. A few issues. One, Harmon does not deny that it specifically identified the New York claims and asked the California court to adjudicate them. That alone should be fatal to its position. There's a six-year New York latches period, and they identified and were looking towards those New York claims. To go to the issue now, so that alone should dispose of the issue. To look at the issue now, prejudice. They admitted below the predicate of non-prejudice. Prejudice requires under Internet Specialties, Pinkett, Grupo Gigante, requires that they prove that they built a valuable business around the mark. They admitted below they did not build the business around the extreme mark. They built it around the JBL mark. That alone is. . . You're assuming those are mutually exclusive. I mean, Ford is the big trademark, but they care about Mustang and they care about F-150. Why can't they care about both the top label and the model label? Because here they said the opposite. They said they phase marks out every two to three years. These are merely descriptors. They said this is not important to them in terms of extreme. JBL is important to them, but they have many descriptors. They phase them out two to three years. They're not significant. That's what they admitted, their witnesses. At worst, that's a factual issue. Infinity seems to have been around for a while. Rather extreme. See, I can get confused, too. All of us can qualify on that one. Extreme seems to have been around for a while. I understand. But at worst, that's a factual issue for a jury. That's not an issue that the court should have resolved. That's a disputed issue of material fact. And likewise, in terms of the issue of notice and so forth, it's undisputed that in a deposition under oath, our client said in 2016 that he did not view them as competitors. 2016, they were not competitive. The progressive encroachment then occurred. That's a two-way street as well. I mean, as Harmon is reaching additional parts of the market, so is JEM. And so in 2016, why would the JEM, I forget, was he president, CEO, not anticipate, hey, we're going to try to reach out to higher price points, and that's where the competition is going to hit. Right, so all we have is what he thought. And he said that he did not consider them competitors. That's express statement. At worst, now that's a factual issue. Whether he should have known something different, made a decision later on. Can you have progressive encroachment where the encroachment is on both sides? Well, here the importance is that the price differential changed, and that was mainly from JBL, from Harmon. There was a 15-fold difference. It was undisputed. And then they kept coming down to come into our area and then dispute. But that's also the speaker market. I still have big speakers back when I was younger, and they all get replaced by these little tiny things that are a lot cheaper. I'm grateful not many things have gotten cheaper, but I'm not sure that can be described as some calculation on the part of Harmon when I don't know that they can sell those big speakers at the high price point anymore. Well, it doesn't require calculation. It just requires progressive encroachment. And it's a factual issue. Was there progressive encroachment that the district court shouldn't have addressed? A jury can decide. Is there progressive encroachment? Is not. Should it be anticipated? Should it not? These are all questions. In 2018, actual confusion emerged. Under prudential, that's something that means that there was no laches beforehand. When the junior user moves into direct competition, selling the same product, the same channels, and causing actual confusion, laches doesn't apply. That's what this court said in prudential. At worst, these are factual questions. At best, though, the case law under prudential regarding progressive encroachment, under all-state price differential, there's no infringement in 2016. At worst, those are issues of law that were decided in error. And the fact is that GEM was enforcing its mark, and the court said that doesn't matter. Another error, it said that makes no difference to the analysis. This court said in American International Group, it does make a difference. So the many issues of error of law and of fact are such that it should not have been resolved. At best, there's a New York cause of action, or tolling, which equitably. By tolling, can you respond to the argument that the Supreme Court set the standard, as argued by your opposing counsel? And do you agree that that's the standard? And if so, how you meet it? We don't agree that's applicable. He's looking at habeas petitions, which are not analogous at all. The Burnett case that we're referring to is a venue issue. Something was dismissed for improper venue, and then it was moved to another venue. That's actually pretty close to what happened here. It was dismissed in another jurisdiction, and then it was moved here. And all this nefarious intent, there's no evidence of it whatsoever. The court merely below said that it could be prejudicial to have two defendants in the same case. Really what it was. Tolling usually has some kind of extraordinary circumstances element or flavor to that sort of analysis. Do you think that that would apply here? And if so, how would you meet that? We don't think it has to be extraordinary circumstances. Under FLIR, Boston Dental Group, motion practice, other proceedings, that's enough for tolling. Likewise, under Burnett, another action, that's enough for tolling. So we don't think extraordinary circumstances are required. And they had notice the entire time they had notice. And the delays that they're talking about are their delays, not our delays. It's actually rather extraordinary. They don't deny there was a pretext of infinity. And then they want to use their delays and judicial delays, which are understandable, takes the court time to rule on motions, against us. We did not cause those delays, and yet all of that time is being counted against us. They're arguing that you caused those delays by doing impermissible joinder. So how do you respond to that? Right. That's what the Supreme Court said in Burnett, justice-defeating technicalities, that a procedural misstep should not be the cause of loss of substantive rights. That's what Burnett specifically said. And there was a venue issue. They filed in a venue, and then it was dismissed for improper venue. And then when they refiled, it was too late. And the Supreme Court said, sure, you may have filed in the wrong venue initially, but justice-defeating technicalities should not be the cause of this loss of substantive rights. That's exactly what we rely on here. Latches is inequitable doctrines, if I understand. Your argument would be we can't stand on technicalities when I'm playing. That's exactly right. A statute of limitations is strictly construed. So if in Burnett the statute of limitations was told, here where it's latches, where it's an equitable doctrine, there's all the more reason why the circumstances should be taken into account in terms of fairness. Because we timely filed in New York, and we weren't sitting for six years. Three years, ten months plus, we filed. And then because of their machinations, all of a sudden now it's untimely. It would be rather extraordinary for a timely pursuit of rights to be upended due to machinations and pretexts by the other side, and due to understandable delays which happened in the course of litigation, but none of which were our fault. They're pointed to issues, and really we pursued it. We had actual confusion emerge in 2018 or so. We pursued it within two years, if you look at the actual circumstances of when we actually came into competition. At worst, these are factual issues, but at best there are numerous legal reasons, such as the fact that they identified New York claims, which they don't deny, and which we did move on. My colleague on the other side is incorrect. Docket 69, page 27 at the top of the page, that's where we said that there's no latches because of their claims. And we quoted in the footnote all of the references to the New York actions, saying that JEM filed in New York, and we want a ruling on those claims. Your Honor referred to that before, paragraph 73 and so forth. They specifically looked at the New York claims and said all the way through discovery and in their pleadings, we don't infringe those claims. That latches period is six years. Thank you. Thank you, Your Honor. I appreciate it. You can submit it when you do. Thank you, counsel, for your helpful arguments. This matter is submitted.
judges: CLIFTON, SUNG, SANCHEZ